All right, our final case for oral argument this morning is Tiffany Poole against Acting Commissioner Kilolo Kijakazi and we will start with Mr. Bonet. You need to unmute. Okay, that should do it. May it please the court. Your Honors, this is a social security disability case in which the ALJ's required findings simply do not support the denial of benefits. The two key components of the ALJ's findings was first of all a sedentary exertion rating as actually a range of sedentary activities as defined by the CFR. The CFR defines sedentary in part as including a limitation to occasional standing or walking, which is elsewhere described as two hours of sitting or standing or walking. Excuse me. The other key component was the sit-stand action. Mr. Bonet, can I just sort of cut through this and say I'm looking at page 5 of 10 of the ALJ's opinion at the bottom of which the ALJ begins to describe the residual functional capacity which he finds and I take it that your point is that it's an inherently ambiguous description because by saying that it's a work, you've put a cap on how much she can do and that cap is defined in the regulations to include no more than two hours of standing. But then it goes on to say four hours of standing, four hours of sitting in a day and so one doesn't know whether she really meant to say light exertional activity because you can subtract but you can't add. Isn't that right? Yeah, I think sedentary is the maximum capability. So if you're saying that a person can stand for four hours during the day, that's not a sedentary rate. So in other words, it's impossible for the ALJ to do what this...legally impossible. What this ALJ did, which was to say I'm finding sedentary work but I actually think you can do a little more than that because I'll tell you that the thing that's troublesome about your position is it seems that the questions posed to the vocational expert captured quite well what the ALJ thought this person could do and the vocational expert in turn thinks with that described capacity there are jobs in the national economy she can do. And so if we're all about the bottom line, what's wrong is the question. But if we actually have to say no, you need a coherent RFC before you can move on to the bottom line, then maybe you have something. Well, I think the vocational expert's testimony I don't think does support that because if you look carefully, and I think I explained this in the briefing, you know, the ALJ first asked a hypothetical light, then wanted sedentary, and then, you know, changed that to the sit-stand option. So there was never a hypothetical that specified both sedentary and the sit-stand option. And I think the vocational expert knows, you know, what the CFR says. You change the, you put in that sit-stand option and you're out of the sedentary framework. So I don't think that the vocational testimony does support the decision, even if it was read that way. I think the proper way to read this, I think, is that it's a sedentary... Wait a minute, Mr. Excuse me. At the risk of just trying to catch up with you and Judge Wood, Mr. Bonnet, I understood the vocational expert to say in response to hypothetical number three, which has the sit-stand option added to it, yes, there are jobs in the national economy that the plaintiff could do. Why isn't that good enough? Or is the answer simply that the ALJ and the vocational expert were trying to mix and match light and sedentary and we ought to send it back and have them straighten this out? Well, I think the vocational testimony was that there would be jobs at the sedentary level and there would be jobs with the sit-stand option. But here we are on page 22. This is in the appendix to your brief at page 52, where this Q means the ALJ is speaking. Thank you for hypothetical number three. I'd like you to take hypothetical number two, which was the sedentary, with the following change. The individual would need to change position every 15 minutes from sitting to standing and back again. And here's the critical maybe problem. Could sit or stand a total of four hours each in an eight-hour workday? And that sentence is inconsistent with a sedentary exertional level. Right. Even though the ALJ has told the vocational expert that we're staying with the sedentary, because we're staying with hypothetical two, which was sedentary instead of light. Well, but it's changing to the sit-stand option. But it's the length of time for standing that I think you're focusing on, if I may be so bold, as the mistake. Right. It's the sedentary limits to two hours of standing. And, you know, the sit-stand option is a limit of four hours of sitting. I think the four hours of standing should be read as kind of describing how that sitting would take place, that it would have to be alternating sitting and standing. That's not what it says, though. Could sit or stand a total of four hours each? Right? Well, that's what the RFC says, and that's what the question says, yes. Right. Okay. And the vocational expert finds plenty of jobs in the national economy. You can put, you know, fishing reels together, you know, by hand. Yeah, that we – but, you know, again, the four hours takes it out as sedentary. So I think you can read it as, you know, you can read the four hours as just describing the sitting requirement, in which case I think you award benefits. You can read it as being inconsistent with the sedentary requirement, in which case I think it needs to be remanded for the ALJ to determine. Or you could, if you find a conflict there, then I think that the issue is the vocational expert. And I don't think the vocational expert was ever asked a question that specified both the sedentary limitation and the sit-stand option. Okay. Well, if you'd like to save a little rebuttal time, we can move on to the commissioner. Ms. Payne. May it please the court. Lindsay Payne on behalf of the Acting Commissioner of Social Security. I'd like to just jump then right to the crux of Judge Wood's concern and address whether it is actually a legal impossibility for an ALJ to assess a sedentary residual functional capacity and then have higher standing abilities, higher than two hours. And I would first direct the court's attention to the case of Buchholz v. Barnhart. Ms. Poole's argument is indistinguishable from that rejected by this court in Buchholz v. Barnhart, as discussed in the Acting Commissioner's brief. Buchholz presented the same alleged conflict in the residual functional capacity that Ms. Poole asserts here. And that alleged conflict was a limitation to sedentary work with a sit-stand option that would have required more standing. Sorry, Buchholz was not precedential, was it? That is correct. I would say that it is persuasive. And maybe more to the point then, it was entirely consistent with Social Security Ruling 96-9P. So if the question is, was the ALJ allowed under the regulations to do what she did, let's look at- But wait a minute. In Buchholz, the phrase used refers to the ALJ's ability to take into account the erosion of the occupational base. That doesn't say, and also expansion of the occupational base. That's what worries me. When I look at the exertional levels, they are defined as the most a person can do. And if they are the most that a person can do, then adding on even more would require you- As I think you actually admitted at one point in your brief- Actually, this is at the top of page 16 of your brief. You say, and I agree, the ALJ would have been more technically correct if she had instead described this as a reduced range of light work with a bunch of restrictions. But we don't know if the ALJ had stayed at the light work level, what she should have said. I mean, that seems to me in conflict with the Chenery Principle. I mean, we would just need to ask the ALJ to do it the right way. Well, I would say that, one, yes, I stand by my statement that it might have been more technically correct. It would be probably- Perhaps more legally correct. Well, I would say a best practice. But if we look, and going back to that word erosion, that's in Social Security speak, if I could sort of translate for the court, when they talk about erosion, they're talking about if we take every single sedentary rated job that there is, how many are going to be left for this person? And Social Security- That's right, exactly. So it's a subtraction. You don't expand by eroding somehow. But Social Security ruling 96-90 talks exactly about this when it talks about the somewhat unique situation of people who are going to be limited to jobs, like Ms. Poole, that are rated as sedentary, but that one of their limitations is that they can't sit for the full six hours. And so even though they're going to be doing sedentary jobs, the occupational base is eroded because they can't sit the whole six hours, and they're going to be standing part of that time. And what Social Security ruling 96-90 says in that situation is it still talks about it in terms of sedentary work. And it says in that situation that, yes, the occupational base will be eroded. But what the ALJ should do is ask a vocational expert, will there still be a significant number of sedentary jobs available for this person who cannot sit for six hours in a day and will be standing more than two hours in a day? Ms. Payne, I don't see anything quite that specific in the Social Security ruling. And I have the same concern about the difference between erosion of the sedentary base and expanding beyond what's in the sedentary base. I also just have to note, we are very familiar with the principle that judges are not supposed to nitpick and quibble about the way ALJs write their opinions. But I also cannot think of any single word more central to an ALJ's opinion than the choice among sedentary, light, medium, and heavy in evaluating residual functional capacity. And I have never before seen an argument by the Commissioner that the ALJ must have just used the wrong word, and we shouldn't nitpick or quibble about the choice of word. Well, I would say that in this case, it's more a matter that different words could be used to reach the same outcome. Because if this court were to reverse, the ALJ could simply describe the same residual functional capacity that she was trying to reach here as light work, except that Ms. Poole is limited to lifting no more than 10 pounds, standing for four hours, sitting for four hours, walking for two hours. That's a possibility, but what this reminds me of, actually, is what we deal with constantly with the sentencing guidelines. If the ALJ had begun with a light work exertional level, that would have anchored the rest of the discussion. And you're right, the ALJ could probably have crafted pretty much exactly the same RFC. We don't know if the ALJ, starting with the correct exertional level, would have done that, or would have thought she could do more, would have thought no, actually. Her restrictions are too severe. I'm uncomfortable with this, because actually what you're saying is that at the sedentary level, there aren't jobs for her. So maybe she would go up to the light level. On the other hand, I mean, actually this ALJ seems to have been a very conscientious person and had evidence in front of her, and thinks that this lady is limited to sedentary work. She says that at the top of page 8. So she might think, well, you know, if this is not compatible with sedentary, I'm going to have to find disability. I mean, I don't know. I can see a couple of different paths, depending on which anchor you start with. One, your question raises a good point that I'd like to address, that even if the residual functional capacity had stated light, because of the sit-stand option and the sitting and standing limitations that were very specific in their findings, the answers from the vocational expert would have remained in the sedentary realm. And so there's no requirement that if the ALJ says light work, that the answers given by the vocational expert have to be light jobs. They can be anything below. And so these jobs would still remain. I'd also like to just point Judge Hamilton to where I'm looking in Social Security Ruling 96-9P. There is a subheading that's bolded, usually, in the way it's presented, and it states alternate sitting and standing. And it says an individual may need to alternate the required sitting of sedentary work by standing and possibly walking periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing. I was aware of that paragraph. What I don't see in there is any language that says the ALJ can stop eroding the base but expand it. Even with the advice of a vocational expert. But what this shows us is that it's not error for the ALJ to talk about this in terms of sedentary work. And the way that the occupational base is being eroded is by saying this is a person who can't actually sit for the full period of a sedentary job. And that's how the occupational base is being eroded here. And we ask the vocational expert, are there still jobs for a person who can't sit the full six hours? And we have the significant, the substantial evidence from the vocational expert here supporting the ALJ's conclusion that there are a significant number of jobs. In fact, over 400,000 jobs, fitting the limitations that the ALJ assessed here. If there's no further questions, we would ask that the court affirm the ALJ's decision. All right. Thank you very much. Anything further, Mr. Bonet? Yes. I think one of the, maybe the biggest thing that distinguishes this case from I think a lot of the other, maybe all of the other decisions, is the overall limit on sitting time. Most of the sit-stand cases that I've seen, again, maybe all of them, they set a limit on how much you can sit for a while. Then how much you can stand for a while. Those are maximum limits. And even if you just added them up, they would seem to be not within the sedentary. You know, it's at the person's discretion. There's a lot of cases from the circuit that talks about the claimant needs the ability to decide when to sit and stand. And when the claimant has that ability to change at will, that means that even if you have the, you know, each time you can stand for half an hour or 15 minutes or whatever, you're not actually doing that. You might stand, you might sit for 15 minutes and then stand for 10 and then sit for another 15. And that ends up being a different, you know, total, you know, that could be within the sedentary limitations. And with boot cults in particular, the transcript from that or parts of it are actually available on Westlaw. And the, you know, the analysis in that case was actually a sit-stand option where they would be sitting quite a bit more than standing. I think it was like 20 minutes of sitting and 10 minutes of standing. That's probably why that's an unpublished decision. But I think that's a fairly significant aspect is that it's not just that there's the 15 minutes of each, but also that there's a four hour cap on, you know, on the ability to sit. And that's what really makes it incompatible with sedentary. Thank you, Your Honors. All right. Thanks to both counsel. We will take this case under advisement and the court will be in recess.